UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CORNERSTONE CHEMICAL COMPANY )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES )<br>)<br>Defendant. ) | Court No. 25-00005 |

## COMPLAINT

Plaintiff Cornerstone Chemical Company ("Cornerstone" or "Plaintiff") brings this action to contest certain aspects of the United States Department of Commerce's ("Commerce") final negative determination in its antidumping duty investigation of melamine from Qatar. *See Melamine From Qatar: Final Negative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 89 Fed. Reg. 97,592 (Dep't Commerce Dec. 9, 2024) (the "Contested Determination"), and accompanying Issues and Decision Memorandum ("Final IDM"). By and through its attorneys, Plaintiff alleges and states as follows:

### JURISDICTION

1. Plaintiff brings this action pursuant to section 516A(a)(2)(A)(i)(I) of the Tariff Act of 1930, as amended ("the Act"), 19 U.S.C. § 1516a(a)(2)(A)(i)(I), to review certain aspects of the Contested Determination, which was issued pursuant to 19 U.S.C. § 1673d and is described in section 516A(a)(2)(B)(ii) of the Act, 19 U.S.C. § 1516a(a)(2)(B)(ii).

2. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

1

**STANDING**

3. Cornerstone is a domestic manufacturer of melamine, the domestic like product, and therefore is an interested party as defined in 19 U.S.C. § 1516a(f)(3) and 19 U.S.C. § 1677(9)(C). Plaintiff was the petitioner in the antidumping duty investigation that gave rise to the Contested Determination, and Plaintiff participated in that investigation, including by filing administrative case briefs. Plaintiff is therefore an interested party who was party to the proceeding in connection with the Contested Determination within the meaning of 19 U.S.C. §§ 1516a(a)(2)(A) and 1516a(d).

4. Accordingly, Plaintiff has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS OF THE ACTION**

5. Commerce published the Contested Determination in the *Federal Register* on December 9, 2024. *Melamine From Qatar: Final Negative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances*, 89 Fed. Reg. 97,592 (Dep't Commerce Dec. 9, 2024).

6. Commerce made a negative final determination in its antidumping investigation of melamine from Qatar and thus, no antidumping duty order was issued against imports of melamine from Qatar.

7. On January 8, 2025, Plaintiff initiated this action in accordance with sections 516A(a)(2)(A)(i)(I) and 516A(a)(2)(B)(ii) of the Act, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(ii), by the filing of a summons within 30 days of the publication in the *Federal Register* of the notice of the Contested Determination. *See* Summons, ECF No. 1 (Jan. 8, 2025).

8. Plaintiff files this Complaint within the time specified in section 516A(a)(2)(A) of

the Act, 19 U.S.C. § 1516a(a)(2)(A), and 28 U.S.C. § 2636(c), which is within 30 days of the filing of the Summons. Thus, this Complaint is timely filed.

## PROCEDURAL HISTORY

9. On February 14, 2024, Cornerstone filed antidumping and countervailing duty petitions with Commerce and the U.S. International Trade Commission ("ITC"), alleging that a domestic industry is materially injured or threatened with material injury by reason of unfairly traded imports of melamine from Germany, India, Japan, the Netherlands, Qatar, and Trinidad and Tobago. With respect to imports of melamine from Qatar, Cornerstone petitioned for both antidumping duties and countervailing duties. Commerce published the notice of initiation of antidumping and countervailing duty investigations of melamine from Qatar on March 11, 2024. *Melamine From Germany, India, Japan, the Netherlands, Qatar, and Trinidad and Tobago: Initiation of Less-Than-Fair-Value Investigations*, 89 Fed. Reg. 17,413 (Dep't Commerce Mar. 11, 2024); *Melamine From Germany, India, Qatar, and Trinidad and Tobago: Initiation of Countervailing Duty Investigations*, 89 Fed. Reg. 17,381 (Dep't Commerce Mar. 11, 2024).

10. On September 24, 2024, Commerce published its preliminary negative antidumping duty determination with respect to melamine from Qatar in the *Federal Register*. *Melamine From Qatar: Preliminary Negative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 77,824 (Dep't Commerce Sept. 24, 2024). Commerce preliminarily calculated a dumping margin below the *de minimis* threshold and therefore made a negative dumping determination for the collapsed entity consisting of Qatar Melamine Company ("QMC"), Qatar Chemical and Petrochemical Marketing and Distribution Company (Muntajat) Q.P.J.S.C. ("Muntajat"), and Qatar Fertiliser Company (P.S.C.) ("QAFCO") (collectively, "Qatari Respondents").

11. Cornerstone and Qatari Respondents filed case briefs and rebuttal briefs concerning sales and general issues on October 24, 2024, and October 31, 2024, respectively. Cornerstone filed a case brief regarding cost issues on November 12, 2024, and Qatari Respondents filed a rebuttal brief concerning cost issues on November 19, 2024. *See* Final IDM at 2. Cornerstone argued in its case briefs that Commerce's preliminary negative dumping determination was based on erroneous decisions. In particular, Cornerstone argued that Commerce erred in preliminarily selecting Turkey as a third country market to calculate normal value ("NV") for purposes of comparison to U.S. sales prices. Cornerstone claimed that a sales-based particular market situation ("PMS") existed in Turkey during the period of investigation ("POI") that prevents or does not permit a proper price comparison, and that Muntajat's prices are not "representative" within the meaning of the statute. Cornerstone contended that, because Turkey is not a viable comparison market, Commerce should instead base NV on constructed value ("CV").

12. Cornerstone also argued that, in basing NV on CV, Commerce should make an adjustment to account for the cost-based PMS that the agency preliminarily found to exist in Qatar with respect to natural gas.

13. Cornerstone argued that Commerce erred in its preliminary determination in declining to make an adjustment to address distortions arising from the use of cost data for the collapsed entity that reflect natural gas transactions between affiliated parties. Commerce preliminarily compared QatarEnergy's transfer price to QAFCO with QatarEnergy's prices to unaffiliated entities in order to find a purportedly arm's-length price. However, Cornerstone claimed that this comparison is an invalid arm's length test because QatarEnergy is a government-owned entity, and its natural gas prices are government-controlled rather than

4

market-determined.

14.     On December 2, 2024, Commerce made a negative final determination in its antidumping investigation regarding melamine from Qatar, and this determination was published in the *Federal Register* on December 9, 2024. *Melamine from Qatar: Final Negative Determination of Sales at Less Than Fair Value and Final Negative Determination of Critical Circumstances,* 89 Fed. Reg. 97,592 (Dep't Commerce Dec. 9, 2024). In its final determination, Commerce rejected Cornerstone's arguments that a sales-based PMS existed in Turkey during the POI because that market was flooded by low-priced imports of melamine from China, driving prices down in a manner that prevents or does not permit a proper price comparison. Commerce stated that evidence indicating that both the EU and China had antidumping duty orders on melamine from China "alone does not constitute evidence that melamine from Qatar is dumped in another country." Final IDM at 15. Commerce also stated that "AUVs are not evidence of subsidized or dumped prices, and the AUVs provided by the petitioner do not prove the argument that the dominant presence of low-priced Chinese imports distorted the Turkish market and significantly depressed the price of melamine in Türkiye." *Id*.

15.     Commerce used Turkey as a third country comparison market for determining NV, and on this ostensible basis, it declined to use CV. *Id.* at 7. Commerce found that a cost-based PMS exists in Qatar with respect to natural gas, but it did not make a PMS adjustment because "no sales were compared to CV." *Id.* at 4-5.

16.     Finally, Commerce rejected Cornerstone's arguments that Commerce should make an adjustment under the major input rule or the transactions disregarded rule to address the collapsed entity's purchases of natural gas from QatarEnergy. *Id.* at 20-21. Commerce stated that, "in evaluating the arm's-length nature of QAFCO's/QMC's purchases of natural gas from

5

QatarEnergy, Commerce compared the transfer price paid for this input to QatarEnergy's COP and to a market price based on QatarEnergy's sales to unaffiliated customers," and that based on that comparison, "no adjustment was warranted to QAFCO's/QMC's cost of manufacturing." *Id.* at 20. Commerce did so despite stating that it "agrees with the petitioner and determines that a cost-based PMS exists in Qatar with respect to the purchase price of natural gas." *Id.* at 21. Commerce thus rejected Cornerstone's argument that Commerce should use the natural gas market price information it submitted in conducting its major input analysis. *Id*. at 20-21.

17. On December 17, 2024, the ITC terminated its antidumping investigation into melamine from Qatar because Commerce made the aforementioned final negative determination in its antidumping investigation of melamine from Qatar, and the ITC published this termination notice in the *Federal Register* on December 20, 2024. *Melamine from Qatar; Termination of Investigation,* 89 Fed. Reg. 104,206 (Int'l Trade Comm'n Dec. 20, 2024). On January 16, 2025, Cornerstone appealed the Commission's termination of its *Melamine from Qatar* antidumping investigation by filing a summons and a complaint with this Court. That action is currently before this Court as Court No. 25-00021.

## STATEMENT OF CLAIMS

### First Count

18. Plaintiff hereby realleges and incorporates by reference paragraphs 1-17.

19. Commerce unreasonably determined that a sales-based PMS does not exist in Turkey and thus improperly selected Turkey as a third country comparison market. Commerce's use of Qatari Respondents' sales of melamine to Turkey during the POI as the basis for determining NV is unsupported by substantial evidence and otherwise not in accordance with law.

6

**Second Count**

20. Plaintiff hereby realleges and incorporates by reference paragraphs 1-19.

21. Commerce's improper use of Turkey as a third country comparison market led to a failure to compare the Qatari Respondents' U.S. sales to CV. As a result, Commerce failed to determine NV based on CV, and it also failed to apply a PMS adjustment to CV, despite finding that a cost-based PMS exists in Qatar with respect to the purchase price of natural gas. Commerce's failure to apply a cost-based PMS adjustment is unsupported by substantial evidence and otherwise not in accordance with law.

**Third Count**

22. Plaintiff hereby realleges and incorporates by reference paragraphs 1-17.

23. Commerce failed to address distortions arising from the use of cost data reflecting natural gas transactions between affiliated parties through use of the major input rule or the transactions disregarded rule. Commerce's refusal to adjust the Qatari Respondents' reported cost information pursuant to the major input rule or, alternatively, the transactions disregarded rule is unsupported by substantial evidence and otherwise not in accordance with law.

**DEMAND FOR JUDGMENT AND RELIEF**

WHEREFORE, Plaintiff Cornerstone respectfully requests that this Court:

1. Hold and declare that the challenged aspects of Commerce's final determination in the antidumping duty investigation of melamine from Qatar are not supported by substantial evidence and otherwise are not in accordance with law;

2. Remand the final determination to Commerce for disposition in accordance with the Court's final Opinion; and

3. Grant such further relief that this Court may deem just and appropriate.

Respectfully submitted,

*/s/ Stephen J. Orava*
Stephen J. Orava
Patrick J. McLain
Nicholas K. Paster
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 737-0500
sorava@kslaw.com

*Counsel for Plaintiff Cornerstone Chemical Company*

Date: February 7, 2025